[No. 13968. Department One. October 10, 1917.]

M. H. HOUSER, *Appellant*, v. B. ATHERTON, *Respondent*.[1]

SALES—CONTRACTS—BREACH — TENDER OF PERFORMANCE. Where, under a contract for the sale of wheat, the purchaser was entitled to a deduction of but 2.46 per cent on account of smut, and demanded a deduction of 3 per cent, he cannot recover damages for failure to deliver, and it is immaterial that the seller was insisting upon a deduction of but one per cent; since the burden was upon the buyer to put the seller in default by a proper tender.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered October 1, 1915, upon findings in favor of the defendant, dismissing an action on contract, tried to the court. Affirmed.

*J. N. Pickrell*, for appellant.

*John W. Mathews*, for respondent.

MAIN, J.—By this action the plaintiff sought to recover damages in the sum of $320, for the alleged failure of the defendant to deliver wheat in accordance with the terms of a written contract. The cause was tried to the court without a jury, and resulted in a judgment dismissing the action. From this judgment, the plaintiff appeals.

The facts are these: On July 27, 1914, at Pullman, Washington, the respondent, in writing, contracted to sell to the appellant,

"2,000 bushels of F. F. Wheat at the price of 70 cents per bushel—net weight, free and clear of all encumbrances, on the basis of No. 1 Forty Fold Wheat to be delivered and

[1]Reported in 167 Pac. 1109.

weighed at P. S. Whse. Co.'s warehouse at Pullman in the state of Washington, on or before the 1st day of September, this year, . . ."

The grain was to be "graded by the purchaser according to the statutes in force at the place of delivery and lawful regulations thereunder." In case the grain was of lower grade than that specified in the contract, the purchaser was "to have a discount from contract price equal to difference in market value, there prevailing, between quality delivered and quality stipulated." On or before September 1st, as provided in the contract, the wheat was delivered at the Puget Sound Warehouse Company's warehouse at Pullman, this being the place specified in the contract. The appellant inspected the wheat, found it to be of lower grade than that specified in the contract for which he was to pay seventy cents, and offered to perform with a deduction of three cents per bushel. This offer was declined by the respondent, who refused to accept a greater deduction than one pound per bushel, as he testifies, and, as the appellant testified, one cent per bushel. This difference, however, is so slight as to be here immaterial. The wheat was admitted to be of lower grade than No. 1 Forty Fold, specified in the contract. The parties being unable to reach an agreement as to the proper deduction, or means by which it should be determined, the wheat was subsequently sold by the respondent to another party. The market price of No. 1 Forty Fold wheat at Pullman on the 1st day of September, 1914, was eighty-six cents per bushel.

The controversy, and the only controversy, between the parties was the amount of deduction that should be made on account of the smutty condition of the wheat. The contract provided that the grain was to be graded by the purchaser according to "the statutes in force at the place of delivery and lawful regulations thereunder." Under chapter 91, Laws of 1911, p. 398 (Rem. Code, § 5980-1 et seq.), which may be here referred to as the grain inspection act, the public

service commission is authorized to make necessary rules and regulations for carrying out and enforcing the provisions of the act. The rules and regulations promulgated by the commission under authority of this act provide that, where the price and amount to be paid depends upon terminal weight and grade, and the contract of sale contains no provision covering the price to be deducted for wheat containing smut, such wheat, when graded as containing one degree of smut, is subject to a deduction of two per cent; when graded "as two degrees of smut, 4 per cent." Under the evidence in this case, the wheat contained one and one-half (1½) degrees of smut, and, under the standards fixed by the rules and regulations above referred to, was subject to a deduction of three per cent at the terminal point, which would be either at Tacoma or Seattle. The price fixed in the contract for the wheat at Pullman, if it had been of the standard specified, was seventy cents per bushel, and the contract provided that it should be graded by the purchaser according to the statutes and regulations in force at the place of delivery. The standards fixed by the rules and regulations of the public service commission applied to the terminal points. According to the evidence offered by the appellant, when the price of wheat at Pullman was seventy cents, the price at either one of the terminal points would be eighty-two cents per bushel. This will be made plain by quoting an excerpt from the testimony, as follows:

"Q. What was the terminal value of that wheat as fixed by the contract price; say at Pullman the price is 70c fixed by the contract; what would be the terminal price? A. On the face of the contract? Q. Yes. A. 82c. Q. 82c? A. Yes, sir. Q. Now, in determining the dockage, you determine first the degree of smut and then figure the percentage on that degree of smut on the value of the wheat at Tacoma or Seattle, is that it? A. Yes, sir. Q. Which would be 82c? A. 82c, yes, sir."

The wheat, as already specified, contained one and one-half (1½) degrees of smut, and was subject to a deduction

at either one of the terminal points of three per cent. This would amount to a deduction of two and forty-six hundredths cents per bushel. The appellant, in his reply to the respondent's answer, alleged that the wheat "contained one and one-half degrees smut, and a discount thereon under said contract was and is two and forty-six hundredths cents per bushel; . . ." The appellant, however, at no time offered to perform the contract with a deduction of two and forty-six hundredths cents per bushel. His offer was a deduction of three cents per bushel, or more than a half a cent per bushel in excess of what the evidence offered by him shows that it should be by the rules and regulations of the public service commission and his pleading admits was a proper deduction. It is true that he suggested to the respondent one or more methods by which the amount of the deduction should be determined, which the respondent declined to agree to, but these were not covered by the contract, and therefore the respondent was not required to accede to them. The burden was upon the appellant to show that he had offered to perform the contract according to its terms before he would be entitled to recover damages. Since he at no time offered to perform with a deduction of two and forty-six hundredths cents per bushel, which both his pleading and the evidence offered in his behalf shows was the proper deduction under the rules and regulations of the public service commission, it follows that he did not make out a case.

We have not overlooked the fact that the respondent testified that he would not have acceded to a deduction of more than one pound per bushel, but before appellant could prevail it was necessary that he offer to perform the contract according to its terms and show that the respondent had refused to so perform. In other words, before the appellant could put the respondent in default, the latter had a right to an opportunity to refuse to perform with an offered deduction on the part of the appellant of two and forty-six hundredths cents per bushel. The fact that the appellant

failed to tender the purchase price is not material or controlling in this case. If the appellant had offered to perform with a deduction of two and forty-six hundredths cents per bushel—and, from the evidence, it appeared that this was the proper deduction under the "statutes in force at the place of delivery and lawful regulations"—and the respondent had rejected this offer with the statement that he would not accede to any deduction greater than one pound per bushel, then the appellant would have been entitled to prevail, even though he had not tendered the purchase price, because the law would not require him to do a vain and useless thing.

The judgment will be affirmed.

ELLIS, C. J., CHADWICK, MORRIS, and FULLERTON, JJ., concur.